# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-1663

———————

Robert Slentz,                                          *
                                                       *
            Appellant,                                 *
                                                       *      Appeal from the United States
    v.                                                 *      District Court for the
                                                       *      Western District of Missouri.
City of Republic, Missouri;                            *
Greg D. Chadwell, Individually and                     *
in his official capacity as Interim                    *
City Administrator,                                    *
                                                       *
            Appellee.                                  *

———————

Submitted: November 17, 2005
Filed:  May 12, 2006

———————

Before SMITH, HEANEY, and BENTON, Circuit Judges.

———————

SMITH, Circuit Judge.

Robert Slentz sued the City of Republic, Missouri, and Interim City Administrator Greg D. Chadwell alleging that the defendants violated his rights under the Family and Medical Leave Act ("FMLA"). The district court[1] granted the defendants' motion for summary judgment. We affirm.

---

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

## I. *Background*

Robert Slentz, a full-time police officer for the City of Republic, Missouri, injured his shoulder while off duty. Slentz took sick leave due to the injury and eventually underwent corrective surgery on his shoulder. Following his surgery, Slentz received a letter from the City designating his sick leave as FMLA leave based upon the City's Personnel Policy. The letter also informed Slentz that, among other things, he must submit a fitness-for-duty certificate from his physician prior to being restored to employment.

By a second letter, the City informed Slentz of the approaching expiration date for his FMLA leave and reminded him that he would need to provide a fitness-for-duty certificate at least one day prior to returning to work. The letter stated further that if such a certificate were not provided, Slentz would be expected to resign at the expiration of his FMLA leave. Unfortunately, Slentz's physician declined to certify Slentz as fit for duty until he had recuperated—several weeks after the expiration of his leave. Accordingly, Slentz submitted his letter of resignation.

Slentz sued, alleging that the defendants wrongfully interfered with his rights under the FMLA. The district court granted the defendants' summary judgment motion. The court held that it was permissible to run sick leave and FMLA leave concurrently, that Slentz was given proper notice, and that the defendants did not otherwise wrongfully interfere with Slentz's exercise of FMLA leave. Finding no error, we affirm.

## II. *Discussion*
### A. *Concurrent Leave*

Slentz contends that the City violated his FMLA rights by extending him only twelve weeks of leave despite his having more than twelve weeks of accrued sick leave. We disagree. The FMLA provides that an "eligible employee"—*e.g.*, one with a "serious health condition that makes the employee unable to perform the functions

of the position of such employee"—"shall be entitled to a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612 (a)(1). The Act grants an employer the power to require an employee to substitute any accrued sick leave for leave provided under the FMLA. § 2612 (d)(2)(B). An employer may permit an employee to use FMLA leave and sick leave sequentially or may require that the two run concurrently. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001); *see* 29 C.F.R. § 825.207(f) ("If neither the employee nor the employer elects to substitute paid leave for unpaid FMLA leave . . . the employee will remain entitled to all the paid leave which is earned or accrued under the terms of the employer's plan.").

In this case, the City elected to run Slentz's FMLA leave concurrently with his accrued sick leave[2] as authorized under the FMLA. *Id*. A contrary result "would unduly and unfairly burden employers." *Strickland*, 239 F.3d at 1206. "[T]he FMLA was intended only to be a statute that provided a minimum labor standard; an assurance that employers would provide employees with twelve weeks of leave every year." *Ragsdale v. Wolverine World Wide, Inc.*, 218 F.3d 933, 939 (8th Cir. 2000), *aff'd* 535 U.S. 81 (2002). "Under the FMLA, twelve weeks of leave is both the minimum the employer must provide and the maximum that the statute requires." *Ragsdale*, 218 F.3d at 938; *accord Strickland*, 239 F.3d at 1206 ("To balance the needs of employers and sick employees, Congress intended that the FMLA provide employees with a minimum entitlement of 12 weeks of leave, while protecting employers against employees tacking their FMLA entitlement on to any paid leave

---

[2]Section 12.5 of the City of Republic Personnel Policy, entitled "Sick and Emergency Leave," states as follows:

"In all cases where applicable, sick/emergency leave will be subject to and designated by the City of Republic as FMLA leave and counted against an eligible employee's FMLA leave entitlement."

benefit offered by the employer."). Consequently, we affirm the district court and hold that there was no violation of Slentz's rights under the FMLA.

## B. *Estoppel*

Slentz also argues that the City's representations to him in its initial notice letter estops the City from claiming that he was limited to twelve total weeks of leave. The letter, in relevant part, read:

> Family Medical Leave will begin on January 30, 2003, and is expected to continue until you are released from your doctor's care.
>
> Except as explained below, you have a right under the FMLA for up to twelve weeks of unpaid leave in a twelve month period. . . .

Pointing to the first sentence above, Slentz asserts that (1) the City knew when it sent the letter that Slentz was expected to be off work until approximately May 17, 2003; and (2) that he had accrued unused sick and vacation leave that would have covered him beyond May 17, 2003.[3] Slentz contends that his reliance on this sentence presents a genuine issue of material fact, making the grant of summary judgment improper. However, the City correctly points out in its brief, as did the district court in its decision, that the very next sentence of that letter undermines Slentz's argument because it unambiguously states that Slentz was entitled to a maximum of twelve weeks of FMLA leave.

For legal support, Slentz cites *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493 (8th Cir. 2002). However *Duty* is distinguishable because it dealt with an employer's letter that informed the employee that his entire 34-week sick leave qualified under the FMLA. In *Duty*, this court held that the district court did not abuse its discretion in applying equitable estoppel to prevent an employer from claiming

---

[3]Slentz's twelve weeks of leave expired on April 24, 2003.

that the employee's leave was confined to the twelve weeks actually afforded by the FMLA. *Id.* at 494. The court reasoned that the letter explicitly guaranteed the employee 34 weeks of leave and that the facts indicated that the employee had relied on this representation. *Id.* By contrast, the initial letter to Slentz did not explicitly guarantee him a specific amount of leave or leave until a specific date but instead assured him twelve weeks of FMLA leave. In addition, Slentz could not have relied on the City's letter in electing surgery because his shoulder surgery was complete when he received the letter. Therefore, we hold that the City was not estopped from limiting Slentz to twelve weeks of leave by its notice letter.

## C. *Record Keeping*

Slentz next posits that summary judgment was improper because the City has not given Slentz records required by 29 C.F.R. § 825.500. Slentz contends that the failure to give him these records creates a genuine issue of material fact as to whether his leave was designated and counted as FMLA leave. This argument fails for two reasons. First, § 825.500 only requires the submission of records when specifically requested by a Department of Labor official. § 825.500 (a) ("These regulations establish no requirement for the submission of any records unless specifically requested by a Departmental official."). Second, the City's initial letter clearly informed Slentz that the City considered the leave to be FMLA leave. 29 C.F.R. § 825.208 (a) (stating that an employer bears the responsibility to "designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee. . . ."). In sum, Slentz's record keeping argument lacks merit.

We hold that the City was permitted to run Slentz's sick leave concurrent with his FMLA leave, that the City was not estopped by its February letter, and that the City was not required to submit any records to Slentz pursuant to § 825.500. Therefore, we affirm the district court's grant of summary judgment.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The majority disregards both the plain language and the plain purpose of the FMLA in holding that the City of Republic did not violate Robert Slentz's rights under the statute.

"Our starting point in interpreting a statute is always the language of the statute itself." *United States v. S.A.*, 129 F.3d 995, 998 (8th Cir. 1997); *see also Hennepin County Med. Ctr. v. Shalala*, 81 F.3d 743, 748 (8th Cir. 1996). Twenty-nine U.S.C. § 2614(a)(2) states in clear, unequivocal language that "[t]he taking of leave under section 2612 of this title [FMLA] shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." The statute further states that, "[n]othing in this Act . . . shall be construed to diminish the obligation of an employer to comply with a collective bargaining agreement or any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established under this Act or any amendment made by this Act." 29 U.S.C. § 2652(a).

The canons of statutory construction also state that "'it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, *but will take in connection with it the whole statute . . . and the objects and policy of the law . . . .*'" *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983) (quoting *Brown v. Duchesne*, 19 How. 183, 194 (1857) (emphasis added in *Bob Jones*)). The FMLA therefore must be analyzed and construed against the background of the Congressional purposes of the Act.

The final Senate report on section 2614(a)(2) "makes explicit that an employer may not deprive an employee who takes leave of benefits accrued before the date on which the leave commenced." S. Rep. No. 103-3, at 32 (1993). The House of Representatives echoed the Senate's intent concerning section 2614(a)(2). H.R. Rep.

No. 103-8(I), at 42 (1993).  In a related report, the House states, "[f]amily and medical leave are in addition to any annual leave, sick leave, or other leave . . . otherwise available to the employee."  H.R. Rep. No. 103-8(II), at 9 (1993).

The Act's legislative history clearly states Congress's intent behind the FMLA. The House of Representatives explained that "[a]n employer is required to continue any pre-existing health benefit coverage during the leave period, and at the conclusion of leave, to reinstate the employee to the same or an equivalent position." H.R. Rep. No. 103-8(I), at 16 (1993).  The Senate's intent  was just as plain:  "[t]he taking of leave may not deprive the employee of any benefit accrued before the leave, nor does it entitle the employee to any right or benefit other than that to which the employee would have been entitled had the employee not taken the leave."  S. Rep. No. 103-3, at 3 (1993).

The majority correctly notes the congressional intent was to balance the concerns of both employers and employees.  Employees are entitled to a minimum of 12 weeks of leave, but are prevented from tacking their FMLA entitlement to the paid leave benefits offered by the employer.  *See* 29 U.S.C. § 2612(d)(2)(B); *Ragsdale v. Wolverine World Wide, Inc.*, 218 F.3d 933, 939 (8th Cir. 2000), *aff'd* 535 U.S. 81 (2002) (holding that the FMLA was intended to provide a minimum labor standard, assuring that employers would provide employees with 12 weeks of leave each year).

However, the majority ignores the plain language of the statute, which indicates that the FMLA cannot be used to deny Slentz's benefits that he earned prior to his FMLA leave.  The majority additionally suggests that Slentz was attempting to improperly tack on FMLA leave to sick leave he had earned as part of the collective bargaining agreement that Republic negotiated with Slentz's union.  I do not agree. Slentz has conceded that his 12 weeks of FMLA leave ran concurrently with the first 480 hours, or 12 weeks, of his earned sick leave.

Slentz's action is distinguishable from *Ragsdale* and *Strickland v. Water Works & Sewer Board*, 239 F.3d 1199 (11th Cir. 2001). In *Ragsdale*, the plaintiff utilized all of her available leave time, after which she requested further leave under the FMLA. 218 F.3d at 935. This was a classic case of tacking, and, it is agreed, one that is prohibited under the FMLA. *Id.* at 940. The majority errs in applying *Ragsdale* to Slentz's claim because Slentz did not ask his employer to tack on his earned sick leave to his FMLA leave. Instead, he asked Republic to allow his sick leave and FMLA leave to run concurrently, holding Republic accountable under the FMLA Act for the remaining sick leave that he was entitled to under his collective bargaining agreement. As such, Slentz's request that Republic honor its commitment to provide him the rest of his earned sick leave conforms to the plain language of sections 2614(a)(2) and 2652(a), which required Republic to provide the benefits that had accrued prior to Slentz's FMLA leave, and to ensure benefits that went above and beyond those provided by the FMLA.

In *Strickland*, the dispute centered on whether the plaintiff was entitled to take FMLA leave in addition to the paid leave available under his employer's sick leave policy. 239 F.3d at 1201-02. The court held that the FMLA permits employers to provide the additional weeks necessary to reach the 12 work weeks of leave that is required in 29 U.S.C. § 2612(d)(1). *Strickland*, 239 F.3d at 1205. *Strickland* therefore allows the FMLA leave to run concurrently with paid sick leave so that an employer who offers sick leave benefits that are below the 12-week minimum requirement of the FMLA can attain the minimum requirement. *Id.* at 1205 n.5, 1206. It is within this context, a context that does not offer leave benefits greater than those provided for in the FMLA, that *Strickland* guarantees the employee a minimum of 12 weeks FMLA leave while also protecting the employer from having to provide more leave than was negotiated between it and the employee. *Id.* at 1206.

The majority opinion misapplies *Strickland*. Slentz has not requested FMLA leave to reach the 12-week minimum of leave; rather, Slentz asks that his FMLA

leave run concurrently with his sick leave, requiring Republic to honor its commitment to the 200-plus hours of sick leave that Slentz is entitled to. By applying *Strickland* outside of its context, the majority shields the employer from complying with its contractual commitments, and bypasses the express intent of the FMLA to safeguard agreements that provide benefits that are greater than those provided for by the FMLA.

The majority opines that the FMLA is not only a minimum labor standard, but also a maximum one. This may be correct absent a collective bargaining agreement that does not provide additional leave rights. But when greater medical or leave rights are bargained for, Congress clearly stated that the FMLA could not be used to erase those rights. *See* 29 U.S.C. §§ 2614(a)(2), 2652(a). This, however, is precisely what Republic did. It used the FMLA to erase the benefits that Slentz had remaining after his FMLA leave, in direct violation of section 2614(a)(2). By refusing to enforce the clear legislative language, the majority allows Republic to use the FMLA to abrogate Slentz's existing benefits.

The majority's decision disregards the congressional purpose behind the FMLA. While it rightly attempts to balance employee and employer concerns, it wrongly excludes from its interpretation of the FMLA the congressional intent to protect Slentz's rights to the 282 hours of sick leave he had remaining after his FMLA leave expired. Consequently, Republic is allowed to use the FMLA as a knife to whittle away the benefit plan it provided its employee. I would reverse the grant of summary judgment and remand to the district court with instructions to enter an order reinstating Slentz to his former position with equivalent pay, benefits, status, and the other terms and conditions of his employment.

_____