**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 07-0262

DARLENE S. CYPERT, APPELLANT,

v.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 8, 2008)                           Decided December 23, 2008)

*Landon E. Overby*, (non-attorney practitioner) of Washington, D.C., for the appellant.

*Paul J. Hutter*, with whom *R. Randall Campbell*, Assistant General Counsel; Richard Mayerick, Deputy Assistant General Counsel; and *Leslie C. Rogall*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and LANCE, *Judges*.

KASOLD, *Judge*: Darlene S. Cypert, wife of veteran Jerry L. Cypert, who has a 100% total disability rating, permanent in nature, appeals from a December 13, 2006, Board of Veterans' Appeals (Board) decision that denied her entitlement to Dependents' Education Assistance (DEA) benefits under Chapter 35 of Title 38 of the United States Code. For the reasons set forth below, the Board's decision will be reversed and the matter remanded for further adjudication consistent with this decision.

## I. BACKGROUND

Veteran Jerry L. Cypert served on active duty from August 1966 to December 1969. On October 30, 1990, the Secretary notified Mr. Cypert that as a result of his service-connected post-traumatic stress disorder (PTSD) he was considered permanently and totally disabled for VA purposes, effective September 25, 1990. At that time, Mr. Cypert was divorced from his first wife.

He entered into a second marriage in July 1994 that ended in divorce in June 1999. In January 2004, he married the appellant. Shortly thereafter, on February 4, 2004, Mrs. Cypert applied for DEA benefits. Her application was denied by the Board because it determined that the availability of DEA benefits ended on September 2000, 10 years after the date Mr. Cypert received his status as a permanently and totally disabled veteran. Accordingly, the Board found that Mrs. Cypert was not eligible for DEA benefits. Additionally, the Board determined that because Mrs. Cypert was not married to Mr. Cypert before the eligibility period for DEA benefits had expired, she was not entitled to an extension of the period of eligibility. *See* 38 C.F.R. § 21.3047 (2008) (allowing eligible or surviving spouses an extension to the period of eligibility under certain circumstances). Mrs. Cypert appealed.

On appeal, Mrs. Cypert essentially argues that the Board erred as a matter of law because 38 U.S.C. § 3512(b)(1)(A) provides that the 10-year delimiting (or eligibility) period for using her husband's DEA benefits begins to run from the date, as determined by the Secretary, that she became an "eligible person" as defined by 38 U.S.C. § 3501 (a)(1)(D)(i). Pursuant to section 3501(a)(1)(D)(i), an "eligible person" is the "spouse of any person who has a total disability permanent in nature resulting from a service-connected disability sustained during a period of qualifying service." Accordingly, because her husband was permanently and totally disabled on the date she married him, Mrs. Cypert argues that the 10-year delimiting period began at that time – when she became Mr. Cypert's spouse. Further, Mrs. Cypert argues that although 38 U.S.C. § 3512 (b)(1)(B) permits her to choose an alternate beginning date, if agreed to by the Secretary, this statutory section does not permit the Secretary to unilaterally assign a beginning date other than the one provided under section 3512(b)(1)(A). Mrs. Cypert also argues that the Secretary's interpretation and application of the implementing regulation, 38 C.F.R. § 21.3046(a)(2)(iii)(2008), is inconsistent with 38 U.S.C. § 3512.

The Secretary argues that the statutory language of 38 U.S.C. § 3512 (a)(1)(D)(i) allows him to determine the beginning date of the 10-year DEA eligibility period, and the beginning date is not limited to when Mrs. Cypert otherwise became an "eligible person" under section 3501(a)(1)(D)(i). The Secretary finds support for his argument in 38 U.S.C. § 3512 (b)(1)(B) and his understanding of the legislative intent and purpose of that statute. He also contends that his implementing

2

regulation, and his application thereof, are consistent with his understanding of the statute.

## II. ANALYSIS

### A.  The Statutory Scheme – 38 U.S.C. § 3500, *et seq*.

Both parties agree that availability of DEA benefits under section 3512 is limited to a period of 10 years.[1]  The question is when the statutory 10-year period begins.  Our review of the Board's interpretation of statutes is de novo.  38 U.S.C. § 7261(a)(1); *Ferenc v. Nicholson*, 20 Vet.App. 58, 60 (2006).  We begin our review by examining the statutory language.  *Ostero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). "Where a statute's language is plain, and its meaning clear, no room exists for construction.  There is nothing to construe."  *Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994)).  "Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."  *Id*. at 586; *Reno v. Koray*, 515 U.S. 50, 56-57 (1995) (construing statutory language in context of statutory scheme); *Kilpatrick v. Principi*, 16 Vet.App. 1, 7 (2002) (examining entire statutory scheme in interpreting meaning of statute); *see also Glaxo Operations U.K. Ltd. v. Quigg*, 894 F.2d 392, 396 (Fed. Cir. 1990) ("[E]ven when the plain meaning of the statutory language in question would resolve the issue before the court, the legislative history should usually be examined at least 'to determine whether there is a clearly expressed legislative intention contrary to the statutory language.'" (quoting *Madison Galleries Ltd. v. United States*,  870 F.2d 627, 629 (Fed. Cir. 1998))).

In this instance, we find that the "statute's language is plain, and its meaning clear."  *Gardner*, 1 Vet.App. at 587.  Section 3512(b)(1)(A) states in relevant part that

---

[1] Congress recently amended section 3512 to authorize a 20-year delimiting period, beginning "on the date the [veteran's] disability was so determined to be a total disability permanent in nature, but only if the eligible person remains the spouse of the disabled person throughout the period."  *See* Veterans Benefits Improvement Act of 2008, Pub. L. No. 110-389, § 321, 122 Stat. 4145 (2008).  Nothing in the amendment indicates the changes are to be applied retroactively. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.").

> Except as provided in subparagraph (B) or (C), a person made eligible by subparagraph (B) or (D) of section 3501(a)(1) of title [38 USCS § 3501(a)(1)] . . . may be afforded educational assistance under this chapter during the 10-year period beginning on the date (as determined by the Secretary) the person becomes an eligible person within the meaning of section . . . 3501(a)(1)(D)(i) . . . .

Pursuant to section 3512(b)(1)(A), a person is "*made eligible* by subparagraph (B) or (D) of section 3501(a)(1) of title [38 USCS. § 3501(a)(1)]" (emphasis added). Section 3501(a)(1), states, in pertinent part, that an "eligible person" is

> [t]he spouse of any person who has a total disability permanent in nature resulting from a service-connected disability sustained during a period of qualifying service.

38 U.S.C. § 3501(a)(1)(D)(i). Thus, by the plain language of section 3501(a)(1)(D)(i), a person who is a spouse of a person who has a service-connected total and permanent disability is an eligible person, and by the plain language of section 3512(b)(1)(A) anyone *made eligible* by section 3501(a)(1)(D) may be afforded educational benefits "during the 10-year period beginning on the date (as determined by the Secretary) *the person becomes an eligible person* within the meaning of section . . . 3501(a)(1)(D)(i)." (emphasis added).

Although the Secretary correctly notes that he is to determine the beginning of the 10-year delimiting period, his discretion is not unfettered. Again, under the very terms of section 3512(b)(1)(A), the beginning date for eligibility for DEA benefits, as determined by the Secretary, is when the *person* becomes an *eligible person* within the meaning of section 3501(a)(1)(D)(i). This section has two criteria. First, a person is not eligible unless that person is a spouse. Second, that person must be the spouse of a "person who has a total disability permanent in nature resulting from a service-connected disability sustained during a period of qualifying service." 38 U.S.C. § 3501(a)(1)(D)(i). The Secretary certainly has the authority to confirm both of these criteria; however, in this instance, confirmation of these criteria is not contested. Accordingly, pursuant to section 3512(b)(1)(A), Mrs. Cypert became an "eligible person," thus triggering the 10-year eligibility period for DEA benefits, when she married Mr. Cypert, since both criteria were satisfied at that time.

### B. The Secretary's Contentions

#### 1. *Section 3512(b)(1)(B)*

The Secretary contends that the beginning date, as determined by him, is limited by

section 3512(b)(1)(B), which states in pertinent part:

> (B) Notwithstanding subparagraph (A), an eligible person referred to in that subparagraph may, subject to the Secretary's approval, elect a later date for the 10-year period that would otherwise be applicable to the person under that subparagraph. The beginning date so elected may be any date between the beginning date determined for the person under subparagraph (A) and whichever of the following dates applies:
>
>> (i) The date on which the Secretary notifies the veteran from whom eligibility is derived that the veteran has a service-connected disability permanent in nature.

It is not clear why the Secretary believes this section authorizes him to determine a beginning date other than the one established by section 3512(b)(1)(A). By its very terms, section 3512(b)(1)(B) permits an eligible person to select an alternate date, if the Secretary permits; absent such an election or lack of permission, the beginning date is the one established by section 3512(b)(1)(A). Assuming arguendo that the Secretary would authorize an alternate date in this case, Mrs. Cypert has not elected one. Moreover, the phrase "for the 10-year period that would otherwise be applicable to the person under subparagraph (A)," reinforces the fact that section 3512(b)(1)(A), by and of itself, establishes a beginning period. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *see also Reno* and *Kilpatrick*, both *supra*. And, as noted above, that 10-year eligibility period begins when a person is "made eligible by subparagraph (B) or (D) of section 3501(a)(1) of title [38 USCS § 3501(a)(1)]." 38 U.S.C. § 3512(b)(1)(A). Succinctly, stated, the Secretary's reliance on section 3512(b)(1)(B) for authority to unilaterally set the beginning of the 10-year DEA eligibility period on the date the veteran is notified that he is totally and permanently disabled, or any other date, is misplaced and without merit.

### 2. The Purpose Behind DEA Benefits

The Secretary also argues that DEA benefits were intended to assist spouses only during the initial period of adjustment, and that this supports his interpretation that the 10-year DEA eligibility period in this case began when Mr. Cypert received his status as a permanently and totally disabled veteran, and expired before he married the current Mrs. Cypert. However, 38 U.S.C. § 3500 states

the purpose behind DEA benefits, and it does not support the Secretary's argument. As stated in pertinent part, DEA benefits are intended to assist spouses of veterans "in preparing [them] to support themselves and their families at a standard of living level which the veteran, but for the veteran's[] service-connected disability, could have expected to provide for the veteran's family." 38 U.S.C. § 3500; *see also Gardner*, *Reno*, and *Kirkpatrick*, all *supra* (examining a statute's meaning within context of statutory scheme); *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("'[W]e assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962))). Noting in section 3500, or elsewhere in the statutory scheme, is there an expressed intention to limit DEA benefits to the initial period of adjustment, as argued by the Secretary. Moreover, the Court cannot read into a statute an alternative purpose premised on congressional intent. *Cf. Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 530 (1959) (when examining an Ohio statute, stating that "[h]aving themselves specifically declared their purpose, the Ohio statutes left no room to conceive of any other purpose for their existence"). Therefore, the Secretary's reliance on a June 2001 statement made by the Deputy Secretary of Veterans Affairs to Congress, in which he contended that section 3512 should be read to suggest that the educational benefits provided to a spouse should be limited to an initial period of adjustment for the veteran as a result of his total and permanent disability, is misplaced to the extent that Congress did not articulate that command in crafting the version of the statute at issue here.

### 3. The Ozer Case

The Secretary correctly notes that the current and applicable version of section 3512 authorizing DEA benefits for spouses was promulgated by Congress in response to the Court's decision in *Ozer v. Principi*, 14 Vet.App. 257 (2001). The Court in *Ozer* invalidated the Secretary's then-implementing regulation, 38 C.F.R. § 21.3046 (2001), because it limited DEA benefits to a 10-year period beginning after the date on which the Secretary determined that the veteran had a total disability permanent in nature. The Secretary argued that the regulation was based upon the statutory language in 38 U.S.C. § 3512(b)(1)(A)-(C) (2000), however, the Court held that although the statute provided a 10-year period in which benefits were available, that period did not begin to run until after the veteran died. There is no dispute that Congress thereafter changed the statute to clearly provide a 10-year period of benefits tied to a date other than the death of the veteran. However, Congress did

not, as the Secretary argues, start that 10-year eligibility period on the date the veteran became totally and permanently disabled. Rather, as we discuss above, Congress established the beginning date of the eligibility period as the date the spouse became an "eligible person" within the meaning of section 3501(a)(1)(D)(i), with optional beginning dates permitted under section 3512(b)(1)(B) at the election of the spouse and with permission of the Secretary. *See* 38 U.S.C. § 3512(b)(1)(A).

### C.  The Implementing Regulation, 38 C.F.R. § 21.3046

The regulation promulgated by the Secretary to implement section 3512 states in pertinent part:

> (iii) For spouses for whom VA made a final determination of eligibility after October 27, 1986, shall be –
> (A) The effective date of the rating, or
> (B) The date of notification, or
> (C) Any date between the dates specified in paragraphs (a)(2)(iii) (A) and (B) of this section as chosen by the eligible spouse.

38 C.F.R. § 21.3046. The Secretary may not, by regulation, establish a beginning date inconsistent with the express language of the statute. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n. 9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.") Accordingly, to the extent that the regulation interprets and implements section 3512 to limit the beginning date of the 10-year DEA delimiting period to the date the Secretary determines that a veteran's total rating is permanent in nature or the date that the Secretary notifies the veteran of this determination, it is contrary to the plain meaning of section 3512 and its legislative purpose.[2] Although agency regulations may be entitled to deference, *see Chevron U.S.A., Inc.,* 467 U.S. at 843-45 (Court gives deference to executive department's regulation making reasonable interpretation of statutory scheme), deference is not warranted when the Secretary's interpretation is contrary to the

---

[2] The plain language of the Secretary's implementing regulation is subject to an interpretation and application consistent with the statute; i.e., that the word "rating" refers to the rating decision issued by a VA regional office (RO) that determines the eligibility of the spouse under 38 U.S.C. § 3501, as argued by Mrs. Cypert. Because the regulation permits an interpretation consistent with the regulation, we need not invalidate the regulation at this time. Rather, it is the Secretary's interpretation and application of the regulation that we find contrary to statute, and therefore impermissible. *See, e.g., Dolese v. Office Depot, Inc.*, 231 F.3d 202, 203 (5th Cir. 2000) (invalidating regulation only to extent it was contrary to statute); *Foxglenn Investors Ltd. Partnership v. Cisneros*, 35 F.3d 947, 952 (4th Cir. 1994).

plain meaning of the statutory language. *See also Paralyzed Veterans of Am. v. Ellerbe Becket Architects and Engs., P.C.*, 950 F. Supp. 389, 392 (D.D.C. 1996) ("An agency is empowered to interpret its own regulations so long as such interpretation is reasonable in light of the text and purpose of the statute and consistent with the statute and regulation." (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 514-15, (1994))). Therefore, because the Secretary's interpretation and application of 38 C.F.R. § 21.3046 in this instance are contrary to the authorizing statute, the Board's December 13, 2006, decision, which rests on that interpretation and application, will be reversed.

### III. CONCLUSION

After consideration of the appellant's and the Secretary's briefs, the oral argument, and a review of the record, the Board's December 13, 2006, decision denying Mrs. Cypert DEA benefits because she was not an eligible person before her husband's period of eligibility for DEA benefits expired is REVERSED, and the matter is REMANDED for further adjudication consistent with this opinion.